UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONVERSE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-12220 |
| ) | |
| AUTONOMIE PROJECT, INC. ) | |
| ) | |
| Defendant. ) | Jury Trial Demanded |
| ) | |

# COMPLAINT

Plaintiff, Converse Inc. ("Converse"), for its complaint against Defendant, Autonomie Project, Inc. ("Autonomie"), based on provisional knowledge and on information and belief as appropriate, alleges as follows:

## The Parties

1. Converse is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at One High Street, North Andover, Massachusetts 01845.

2. On information and belief, Autonomie is a corporation organized and existing under the laws of the State of Massachusetts with a principal place of business at 2 Hagar Street, #2, Jamaica Plain, Massachusetts 02130.

## Jurisdiction and Venue

3. This is an action for trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair business practices. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("Lanham Act"), Massachusetts General Law

Chapter 110H, Massachusetts General Law Chapter 93A, and the common law of the State of Massachusetts.

4. This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5. On information and belief, Autonomie operates a website at www.autonomieproject.com, where Autonomie advertises, offers for sale, and sells footwear and other products to customers, including customers in the State of Massachusetts and in this District.

6. On information and belief, this Court may exercise personal jurisdiction over Autonomie based upon its contacts with this forum, including at least having a principal place of business here, regularly and intentionally doing business here, and committing acts giving rise to this lawsuit here.

7. Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

## General Allegations – Converse's Marks

8. Converse owns common law and federal trademark rights in the appearance of the outsole, midsole, and upper designs commonly used in connection with Converse's Chuck Taylor All Star shoes, including but not limited to the design of two stripes on a midsole, the design of a toe cap, the design of a multi-layered toe bumper featuring diamonds and line patterns, and the relative position of these elements to each other, as well as U.S. Trademark Registrations Nos. 1,588,960; 3,258,103; 4,062,112; and 4,065,482 (collectively, the "Converse Trade Dress") (copies of these Registrations are attached as Exhibits 1-4).  Trademark Registration No. 1,588,960 has become incontestable and constitutes conclusive evidence of the

validity of the trademark and of Converse's ownership of and exclusive right to use the trademark. Exemplary images of the Converse Trade Dress are shown Illustration 1 below.



**Illustration 1: Examples of the Converse Trade Dress**

9.      First introduced around 1917, Converse has spent millions of dollars advertising and promoting shoes bearing the Converse Trade Dress. Converse's advertisements and promotions of the Converse Trade Dress have appeared in print, on the Internet, on billboards, in videos, and at retail. Example advertisements of the Converse Trade Dress are attached to this Complaint as Exhibit 5. Over the past four years alone, Converse has spent more than $92 million advertising and promoting the Converse Trade Dress in the United States.

10.     Converse has sold shoes bearing the Converse Trade Dress throughout the world and in every state of the United States. Converse sells shoes bearing the Converse Trade Dress

through its own retail stores, on the Internet, and through a wide variety of retailers including, for example, Nordstrom, Kohl's, JC Penney, Foot Locker, Saks Fifth Avenue, and independent shoe retailers of all sizes throughout the country.  Since its introduction around 1917, Converse has sold over one billion pairs of shoes bearing the Converse Trade Dress.  Over the past decade, Converse sold over 153 million pairs of shoes bearing the Converse Trade Dress throughout the United States, and those sales earned Converse more than $2.4 billion in gross U.S. revenue.  Over the past five and one half years alone, Converse sold well over 100 million pairs of shoes bearing the Converse Trade Dress throughout the United States, and those sales earned Converse more than $1.8 billion in gross U.S. revenue.

11.     The Converse Trade Dress is also the subject of widespread and unsolicited public attention.  This publicity extends from acclaim in books, magazines, and newspapers to frequent appearances in movies and television shows.  As representative examples, the Converse Trade Dress is the subject of books including "Chucks!: The Phenomenon of Converse Chuck Taylor All Stars," and "Chuck Taylor, All Star," where the Converse Trade Dress is described as an icon of American footwear and the most famous athletic shoe in history.  Example excerpts from these books are attached to this Complaint as Exhibit 6.  The Converse Trade Dress has also been featured in numerous newspaper and magazine articles, and is the focus of Internet chatter and fan sites such as chucksconnection.com, which celebrates the Converse Trade Dress and its presence throughout American culture.  Example articles and website images illustrating the unsolicited publicity of the Converse Trade Dress are attached to this Complaint as Exhibit 7.

12.     As a result of Converse's long-term, continuous, and substantial use, advertising, and sales of shoes bearing the Converse Trade Dress, and the widespread publicity and attention that has been paid to the Converse Trade Dress, the Converse Trade Dress is famous and has

acquired substantial secondary meaning as consumers have come to uniquely associate it as a source identifier of Converse.

### General Allegations – Autonomie's Unauthorized Activities

13. On information and belief, Autonomie sells, offers to sell, distributes, promotes, and/or advertises footwear bearing confusingly similar imitations of the Converse Trade Dress (the "Infringing Products").

14. On information and belief, Autonomie sells, offers to sell, distributes, promotes, and/or advertises the Infringing Products in several styles, including at least its "Ethletic High-top," "Ethletic Low-top," "Ethletic Children's Sneakers," and "Ethletic Youth Sneakers" footwear products. Illustration 2 below compares the Converse Trade Dress to images of representative Infringing Products.



**Illustration 2: Exemplary Images of the Converse Trade Dress (left), Exemplary Images of Autonomie's Infringing Products (right)**

Autonomie Project's "Ethletic High-top Sneakers"

| Illustration 2: Exemplary Images of the Converse Trade Dress (left), Exemplary Images of Autonomie's Infringing Products (right) ||
|---|---|
| | Autonomie Project's "Ethletic Low-top Sneakers" |
| | Autonomie Project's "Ethletic Children's Sneakers" |
| | Autonomie Project's "Ethletic Youth Sneakers" |

| **Illustration 2: Exemplary Images of the Converse Trade Dress (left), Exemplary Images of Autonomie's Infringing Products (right)** ||
|---|---|
| | **Outsole for Autonomie Project's "Ethletic" Shoe Products** |

15. Converse used the Converse Trade Dress extensively and continuously before Autonomie began selling, offering to sell, distributing, promoting, or advertising the Infringing Products.

16. Converse has never authorized Autonomie to sell, offer to sell, distribute, promote, or advertise the Infringing Products.

17. On August 31, 2012, Converse mailed a cease and desist letter to Autonomie's president at its business address in Massachusetts. The letter, attached as Exhibit 8, gave Autonomie notice that various shoes Autonomie was promoting, offering to sell, and selling, infringe the Converse Trade Dress.

18. On its website, Autonomie states that consumers have informed Autonomie that its Infringing Products embody the style of and/or appear similar to Converse's Chuck Taylor All Star shoes, which are the most prominent and famous example of Converse's products bearing the Converse Trade Dress. At least one comment from a consumer on Autonomie's website states that Autonomie's shoes "are just copying converse chucks style." Autonomie itself states on its website that its products are the "newest incarnation of Converse" and that the "number

one" response from consumers when seeing Autonomie's shoes is that "they look like [Converse's] Chuck Taylor's." Images from Autonomie's website evidencing these statements are attached to this Complaint as Exhibit 9.

19. On information and belief – and as evidenced by the facts and circumstances alleged above – Autonomie's infringements have been intentional and willful.

## Count I: Trademark Infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1))

20. Converse re-alleges each and every allegation set forth in paragraphs 1 through 19 above, inclusive, and incorporates them by reference herein.

21. Autonomie's offers to sell, sale, distribution, promotion, and/or advertisement of Infringing Products violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

22. The Converse Trade Dress is federally registered, and is entitled to protection under both federal law and common law. The Converse Trade Dress has a distinctive appearance using unique and non-functional designs. Converse has extensively and continuously promoted and used the Converse Trade Dress for many decades in the United States and worldwide. Through that extensive and continuous use, the Converse Trade Dress has become a famous and well-known indicator of the origin and quality of Converse footwear. The Converse Trade Dress has also acquired substantial secondary meaning in the marketplace.

23. Trademark Registration No. 1,588,960 has become incontestable and constitutes conclusive evidence of the validity of trademark and of Converse's ownership of and exclusive right to use the trademark.

24. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the

Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Converse.

25.     Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Converse Trade Dress.

26.     On information and belief, Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has been intentional, willful, and malicious.  Autonomie's bad faith is evidenced at least by the similarity of the Infringing Products to the Converse Trade Dress, as demonstrated in Illustration 2 above, by Autonomie's own admissions on at least its website, and by Autonomie's continuing disregard of Converse's rights after receiving Converse's cease and desist letter.

27.     Converse is entitled to injunctive relief, and Converse is also entitled to recover Autonomie's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### Count II: False Designation of Origin/Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

28.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 27 above, inclusive, and incorporates them by reference herein.

29.     Autonomie's offers to sell, sale, distribution, promotion, and/or advertisement of Infringing Products, in direct competition with Converse, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

30. The Converse Trade Dress is federally registered, and is entitled to protection under both federal law and common law. The Converse Trade Dress has a distinctive appearance using unique and non-functional designs. Converse has extensively and continuously promoted and used the Converse Trade Dress for many decades in the United States and worldwide. Through that extensive and continuous use, the Converse Trade Dress has become a famous and well-known indicator of the origin and quality of Converse footwear. The Converse Trade Dress has also acquired substantial secondary meaning in the marketplace.

31. Trademark Registration No. 1,588,960 has become incontestable and constitutes conclusive evidence of the validity of trademark and of Converse's ownership of and exclusive right to use the trademark.

32. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Converse.

33. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Converse Trade Dress.

34. On information and belief, Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has been intentional, willful, and malicious. Autonomie's bad faith is evidenced at least by the similarity of the Infringing Products to the Converse Trade Dress, as

demonstrated in Illustration 2 above, by Autonomie's own admissions on at least its website, and by Autonomie's continuing disregard of Converse's rights after receiving Converse's cease and desist letter.

35.     Converse is entitled to injunctive relief, and Converse is also entitled to recover Autonomie's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count III: Dilution under Section 43(c) of the Lanham Act 15 U.S.C. § 1125(c)

36.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 35 above, inclusive, and incorporates them by reference herein.

37.     Autonomie's offers to sell, sale, distribution, and/or advertisement of Infringing Products violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

38.     The Converse Trade Dress is federally registered, and is entitled to protection under both federal law and common law.  The Converse Trade Dress has a distinctive appearance using unique and non-functional designs.  Converse has extensively and continuously promoted and used the Converse Trade Dress for many decades in the United States and worldwide.  Through that extensive and continuous use, the Converse Trade Dress has become a famous and well-known indicator of the origin and quality of Converse footwear.  The Converse Trade Dress has also acquired substantial secondary meaning in the marketplace.

39.     Trademark Registration No. 1,588,960 has become incontestable and constitutes conclusive evidence of the validity of trademark and of Converse's ownership of and exclusive right to use the trademark.

40.     The Converse Trade Dress is famous and has acquired substantial secondary

meaning and fame in the marketplace before Autonomie commenced use of its colorable imitations of the Converse Trade Dress in connection with the Infringing Products.

41.    Autonomie's use of the Converse Trade Dress and of colorable imitations thereof is likely to cause, and has caused, dilution of the famous Converse Trade Dress at least by eroding the public's exclusive identification of the famous Converse Trade Dress with Converse and by lessening the capacity of the famous Converse Trade Dress to identify and distinguish Converse footwear.

42.    Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Converse Trade Dress.

43.    On information and belief, Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has been intentional, willful, and malicious.  Autonomie's bad faith is evidenced at least by the similarity of the Infringing Products to the Converse Trade Dress, as demonstrated in Illustration 2 above, by Autonomie's own admissions on at least its website, and by Autonomie's continuing disregard of Converse's rights after receiving Converse's cease and desist letter.

44.    Converse is entitled to injunctive relief, and Converse is also entitled to recover Autonomie's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count IV: Common Law Trademark Infringement and Unfair Competition

45.    Converse re-alleges each and every allegation set forth in paragraphs 1 through 44

above, inclusive, and incorporates them by reference herein.

46. Autonomie's offer to sell, sale, distribution, promotion, or advertisement of Infringing Products, in direct competition with Converse, constitutes common law trademark infringement and unfair competition.

47. The Converse Trade Dress is federally registered, and is entitled to protection under both federal law and common law. The Converse Trade Dress has a distinctive appearance using unique and non-functional designs. Converse has extensively and continuously promoted and used the Converse Trade Dress for many decades in the United States and worldwide. Through that extensive and continuous use, the Converse Trade Dress has become a famous and well-known indicator of the origin and quality of Converse footwear. The Converse Trade Dress has also acquired substantial secondary meaning in the marketplace.

48. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof is likely to cause consumer confusion as to the origin or sponsorship of the Infringing Products by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Converse.

49. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Converse Trade Dress.

50. On information and belief, Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has been intentional, willful, and malicious. Autonomie's bad faith is evidenced at least by the similarity of the Infringing Products to the Converse Trade Dress, as

demonstrated in Illustration 2 above, by Autonomie's own admissions on at least its website, and by Autonomie's continuing disregard of Converse's rights after receiving Converse's cease and desist letter.

51. Converse is entitled to injunctive relief, and Converse is also entitled to recover Autonomie's profits, actual damages, punitive damages, costs, and reasonable attorney fees.

### Count V: Dilution under Massachusetts General Law c. 110H

52. Converse re-alleges each and every allegation set forth in paragraphs 1 through 51 above, inclusive, and incorporates them by reference herein.

53. Autonomie's offer to sell, sale, distribution, or advertisement of Infringing Products, in direct competition with Converse, violates Chapter 110H of Massachusetts General Law.

54. The Converse Trade Dress is federally registered, and is entitled to protection under both federal law and common law. The Converse Trade Dress has a distinctive appearance using unique and non-functional designs. Converse has extensively and continuously promoted and used the Converse Trade Dress for many decades in the United States and worldwide. Through that extensive and continuous use, the Converse Trade Dress has become a famous and well-known indicator of the origin and quality of Converse footwear. The Converse Trade Dress has also acquired substantial secondary meaning in the marketplace.

55. The Converse Trade Dress is famous and has acquired substantial secondary meaning in the marketplace long before Autonomie commenced use of its colorable imitations of the Converse Trade Dress in connection with the Infringing Products.

56. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof

is likely to cause, and has caused, dilution of the famous Converse Trade Dress at least by eroding the public's exclusive identification of the famous Converse Trade Dress with Converse and by lessening the capacity of the famous Converse Trade Dress to identify and distinguish Converse footwear.  Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused confusion as the source of the Infringing Products by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Converse.

57. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Converse Trade Dress.

58. On information and belief, Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has been intentional, willful, and malicious.  Autonomie's bad faith is evidenced at least by the similarity of the Infringing Products to the Converse Trade Dress, as demonstrated in Illustration 2 above, by Autonomie's own admissions on at least its website, and by Autonomie's continuing disregard of Converse's rights after receiving Converse's cease and desist letter.

59. Converse is entitled to injunctive relief.

### Count VI: Unfair Business Practices under Massachusetts General Law c. 93A

60. Converse re-alleges each and every allegation set forth in paragraphs 1 through 59 above, inclusive, and incorporates them by reference herein.

61. Autonomie's offers to sell, sale, distribution, promotion, and/or advertisement of

Infringing Products, in direct competition with Converse, violates Chapter 93A of Massachusetts General Law.

62. The Converse Trade Dress is federally registered, and is entitled to protection under both federal law and common law. The Converse Trade Dress has a distinctive appearance using unique and non-functional designs. Converse has extensively and continuously promoted and used the Converse Trade Dress for many decades in the United States and worldwide. Through that extensive and continuous use, the Converse Trade Dress has become a famous and well-known indicator of the origin and quality of Converse footwear. The Converse Trade Dress has also acquired substantial secondary meaning in the marketplace.

63. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Converse.

64. Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Converse Trade Dress.

65. On information and belief, Autonomie's use of the Converse Trade Dress and of colorable imitations thereof has been intentional, willful, and malicious. Autonomie's bad faith is evidenced at least by the similarity of the Infringing Products to the Converse Trade Dress, as demonstrated in Illustration 2 above, by Autonomie's own admissions on at least its website, and

by Autonomie's continuing disregard of Converse's rights after receiving Converse's cease and desist letter.

66. Converse is entitled to injunctive relief, and Converse is also entitled to recover actual damages, enhanced damages, costs, and reasonable attorney fees under Chapter 93A of Massachusetts General Law.

## Jury Demand

Converse demands a trial by jury.

## Relief Sought

WHEREFORE, Converse respectfully prays for:

A. Judgment that Autonomie has (i) willfully infringed the Converse Trade Dress in violation of § 1114 of Title 15 in the United States Code, (ii) willfully used false designations of origin/unfair competition in violation of § 1125(a) of Title 15 in the United States Code, (iii) willfully diluted the Converse Trade Dress in violation of § 1125(c) of Title 15 in the United States Code, (iv) willfully infringed the Converse Trade Dress and engaged in unfair competition in violation of the common law of Massachusetts; (v) willfully diluted the Converse Trade Dress in violation of Chapter 110H of the Massachusetts General Law; and (iv) willfully engaged in unfair business practices in violation of Chapter 93A of the Massachusetts General Law.

B. A preliminary and permanent injunction prohibiting Autonomie and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of the Converse Trade Dress, including at least from selling, offering to sell, distributing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of the Converse Trade Dress;

C.    An order directing the destruction of all Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of the Converse Trade Dress in Autonomie's possession or control, including the destruction of all advertising materials related to the Infringing Products in Autonomie's possession or control, including on the Internet;

D.    An award of Autonomie's profits, actual damages, enhanced profits and damages, punitive damages, costs, and reasonable attorney fees for Autonomie's trademark infringements and dilution, and acts of unfair competition and unfair business practices; and

E.    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 9, 2013

/s/ Erin E. Bryan
Erin E. Bryan (BBO No. 675955)
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
Telephone: (617) 720-9600
Facsimile: (617)720-9601
ebryan@bannerwitcoff.com

Christopher J. Renk
Erik S. Maurer
Eric J. Hamp
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001
crenk@bannerwitcoff.com
emaurer@bannerwitcoff.com
ehamp@bannerwitcoff.com

Attorneys for Plaintiff,
Converse Inc.